569 So.2d 750 (1990)
THE FLORIDA BAR, Complainant,
v.
Edward C. ROOD, Respondent.
No. 72867.
Supreme Court of Florida.
July 12, 1990.
Rehearing Denied November 15, 1990.
John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Bonnie L. Mahon and Richard A. Greenberg, Asst. Staff Counsels, Tampa, for complainant.
Donald A. Smith, Jr. and Scott K. Tozian of Smith and Tozian, P.A., Tampa, for respondent.
PER CURIAM.
Edward C. Rood petitions for review of a referee's report that found him guilty of misconduct and recommended a one-year suspension from the practice of law. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution.
The Bar's complaint against Rood arose from his representation of the Nance family. The Nances came to Rood seeking legal advice regarding their daughter, Chelsey, who was suffering from birth-related nervous system disorders. The child had been born in Michigan, and the Nances felt the doctor and hospital there had not handled the case correctly. They had come to Tampa to see Dr. Richard Gunderman, a specialist in pediatric neurology. Rood conferred with Dr. Gunderman on the subject of possible negligence in Michigan.
Initially, Dr. Gunderman's opinion was that there had been no deviation from the standard of care. He dictated a memo to that effect and, he testified later, communicated his belief to Rood, though he did not show him the memo. This document became known as the Gunderman memo.
The Nances did not accept Dr. Gunderman's opinion, which he testified later was based on his belief that computerized axial tomography (a CAT scan) was unavailable to the Michigan neonatologist, Dr. Alverson. When the Nances told him the Michigan hospital had a CAT scanner, he changed his opinion and said he believed Dr. Alverson's treatment of Chelsey was below the standard of care.
Rood had the Nances contact Michigan counsel, and a lawsuit ensued against Dr. Alverson and other physicians (styled Nance v. Tobin). At Rood's request, Dr. Gunderman sent him two copies of his file. Rood sent a copy of Dr. Gunderman's file to his Michigan co-counsel. However, the Gunderman memo, with its original opinion that there was no negligence, was not included in the copies of the documents sent to co-counsel. Therefore, when co-counsel complied with the defense request to furnish copies of Dr. Gunderman's file, the memo was not provided to the defendant as part of discovery.
While the Michigan suit was in progress, Rood filed a lawsuit in Florida for the Nances against Eckerd Drugs, for allegedly misfilling a prescription. This lawsuit *751 (Nance v. Eckerd) had three pertinent consequences.
First, when drafting answers to interrogatories in the Michigan case, Rood answered "No" to a question about the pendency of any other lawsuits filed by the Nances. He explained in a note to Michigan co-counsel, however, that he was "considering" filing a lawsuit against a pharmacy, and that counsel might want to consider the answer a "technical no." In fact, the lawsuit already had been filed.
Second, in answering discovery in the Eckerd case, Rood drafted answers to interrogatories making it appear that Dr. Gunderman and a Tampa hospital were the only health care providers to have treated Chelsey, when in fact she had received a great deal of medical treatment in Michigan.
Third, it was during discovery in the Eckerd case that the Gunderman memo was discovered. Counsel for Eckerd obtained a review of Dr. Gunderman's files; the memo "perked up my curiosity," counsel later testified, and he advised defense counsel in Michigan, the existence of that litigation having by then been discovered.
When the Nances filed an amended complaint in Nance v. Tobin, Michigan law permitted the defense to redepose Dr. Gunderman. Before the deposition, Rood contacted Dr. Gunderman's office and advised that all correspondence between the doctor and the Nances' lawyers either be destroyed or sent to him so he could destroy it. When Dr. Gunderman's files were examined at the second deposition, the Gunderman memo could not be found. When confronted with a copy of the memo, the doctor admitted that the original had been in his file. He denied giving anyone consent to remove the memo from the file.
Ultimately, the Michigan case ended with a consent judgment wherein the Nances disclaimed any negligence on the part of the defendants. Dr. Alverson then sued Rood and Dr. Gunderman in Michigan for fraud and won a jury verdict.
The Bar charged Rood with violating six rules of the former Florida Bar Code of Professional Responsibility[*] and sought disbarment. The referee found Rood guilty of violating five disciplinary rules: conduct involving dishonesty, fraud, deceit, or misrepresentation; conduct that adversely reflects on his fitness to practice law; concealing or knowingly failing to disclose that which he is required by law to reveal; participating in the creation or preservation of false evidence; and suppressing evidence that he was obliged to reveal.
In determining punishment, the referee found five aggravating factors: a dishonest or selfish motive, a pattern of misconduct, refusal to acknowledge that his conduct was wrong, substantial experience in law practice, and causing his clients to commit perjury through false interrogatory answers. In mitigation he found six factors: the absence of a prior disciplinary record, excellent character and reputation, substantial and meaningful contributions to legal and nonlegal communities, the isolated nature of this incident, delay in prosecution, and the passage of time after the incident with no similar misconduct. The referee recommended that Rood be suspended for one year.
Rood attacks every finding made by the referee. Both sides attack the recommended punishment. Rood argues that even if he is guilty of some misconduct, no punishment is warranted. The Bar urges disbarment.
The referee's recommendation set out certain facts which he felt were proven by the record and upon which he relied in *752 finding Rood guilty. The referee summarized them as follows:
a. respondent knew of the existence of Dr. Gunderman's memo of August 18, 1980;
b. respondent concealed Dr. Gunderman's memo from everyone;
c. respondent failed to provide co-counsel with the Gunderman memo, or any information about it;
d. respondent removed, or caused to be removed, from Dr. Gunderman's file the original Gunderman memo; and,
e. respondent knowingly prepared, or caused to be prepared, false and incomplete interrogatory responses with the intent to conceal the existence of the Nance v. Tobin lawsuit from opposing counsel in the Nance v. Eckerd case, and vice versa.
Rood maintains that these findings of fact are not supported by the record. He says Dr. Gunderman never told him about the memo and that his paralegal compiled the medical records, not him. Since he did not know of the memo, he could not have concealed it or given it to co-counsel. He avers that there is no proof whatsoever that he or anyone else deliberately removed the memo from the file. He says he did not know the suit against Eckerd had been filed when he drafted the interrogatory response in Nance v. Tobin. Finally, he characterizes the answers to interrogatories in Nance v. Eckerd as "incomplete" and says they were corrected promptly.
The referee's first four findings of fact relate to the Gunderman memo. It is true that no witness testified that he or she told Rood of the memo, or ever saw him in possession of the memo. Dr. Gunderman, however, did testify that he initially told Rood that Chelsey's Michigan treatment had not fallen below the standard of care. He also testified that when a request for patient records was made he always copied every document in the file. Thus, the referee could conclude that the memo was sent to Rood. The referee was permitted to disregard Rood's account that he did not see the memo, based on substantial discrepancies between Rood's testimony before the referee and in the Alverson v. Rood lawsuit. Further, it is undisputed that Rood did not tell anyone about the Gunderman memo and that it was not included in the copies of the file which were sent to Rood's co-counsel.
There is no direct evidence concerning the removal of the original memo from the file. However, the original memo was in the file when Dr. Gunderman's records were reviewed by Eckerd's counsel. Rood later asked Dr. Gunderman to destroy all correspondence between the lawyers and the physician. Thereafter, the original memo was missing from the file. In light of the evidence that Rood was attempting to conceal the existence of the memo, we believe the referee could conclude that Rood had either taken the original memo out of the file or had someone else do so.
The facts underlying the referee's findings with regard to the interrogatory answers are undisputed. Rood must have known the answers were false. As a consequence of Rood's conduct, his clients signed false answers under oath. The referee was entitled to reject Rood's contention that he had no intent to provide false information.
Turning to discipline, we note that there was much in mitigation and aggravation. Rood again attacks the aggravating circumstances, but we find his arguments unpersuasive. Likewise, we reject the Bar's arguments that some of the mitigating circumstances either were not established or do not constitute mitigation, with the exception of one: delay in prosecution. While four years elapsed between the time the Gunderman memo was discovered and the Bar's complaint was filed, we see no undue delay on the part of the Bar, which waited until Dr. Alverson's suit against Rood was final before proceeding to the grievance committee. Furthermore, we perceive no prejudice to Rood; indeed, the passage of time helped the referee to find a mitigating factor, Rood's clean record since this incident.
Upon our examination of the record we believe the recommended sanction, a one-year suspension from the practice of law, *753 to be appropriate. The misconduct is serious and reprehensible, but it does not merit the extreme sanction of disbarment. In large part this is due to the isolated nature of this transaction, especially Rood's lack of disciplinary problems in the lengthy period since the incident came to light.
We approve the referee's report. Edward C. Rood is hereby enjoined and prohibited from the practice of law in this state for a period of one year. This suspension shall be effective August 13, 1990, thereby giving Rood thirty days to take the necessary steps to protect his clients. In the meantime, Rood shall accept no new business.
We assess against Rood the costs of this proceeding, which the referee found to be $3,917.20, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion.
McDONALD, J., dissents with an opinion.
EHRLICH, Justice, concurring in part and dissenting in part.
I join in the Court's opinion with respect to guilt, but dissent as to discipline. I have great difficulty in reconciling the referee's findings of fact relating to respondent's misconduct and the discipline recommended by the referee and approved by the majority.
The referee rejected "as being totally unworthy of belief" respondent's "testimony in various forums, including the final hearing" concerning Dr. Gunderman's memo with the words: "I am satisfied that respondent knew of the Gunderman memo and that he engaged in a course of conduct to deliberately conceal its existence from everyone as hereinafter described." Report of Referee at 3. The referee totally dismissed out of hand respondent's explanation for his answers to interrogatories in the Eckerd suit with the conclusion that "it [was] all part of a continuing course of conduct designed to conceal, mislead and obfuscate." Id. at 4. Further, the referee found "that the respondent deliberately attempted to conceal the pendency of the Nance v. Tobin lawsuit filed in Michigan from Eckerd Drugs and its counsel." Id. at 5. The referee also found "that the respondent intentionally and deliberately concealed or attempted to conceal, from Dr. Alverson and his attorney, Dr. Gunderman's prior opinion as reflected in his memo dated August 18, 1980. Dr. Gunderman's opinion was concealed from Dr. Alverson's attorney despite numerous discovery requests." Id.
Among the other findings by the referee are "that the respondent removed, or caused to be removed, the original of the Gunderman memo from Dr. Gunderman's own files" and "that the respondent attempted to conceal the existence of the Gunderman memo from everyone involved in the Nance v. Tobin lawsuit. Implicit in this finding is, of course, a finding that the respondent knew of the existence of the Gunderman memo." Id. at 6.
Moreover, Mr. Rood was sued by Dr. Alverson in the United States District Court for the Western District of Michigan for fraud and conspiracy to defraud Dr. Alverson and Physician's Insurance Company of Michigan, his liability insurance carrier. A jury found, by clear and convincing evidence, against Mr. Rood, and that judgment was upheld by the United States Circuit Court of Appeals for the Sixth Circuit.
The integrity of the individual lawyer is the heart and soul of our adversary system. In the ultimate analysis, our system depends on the integrity, honesty, moral soundness, and uprightness of the lawyer. That integrity must be above reproach. There can be no breach or compromise in that essential quality of an officer of the court without seriously undermining our entire adversary system. The referee's findings, amply supported by the record, established with crystal clarity, that Mr. Rood at the times in question exhibited an *754 absence of the essential qualities that are the sine qua non of an officer of the court.
The referee recommended and this Court approves that respondent be found guilty of violating five disciplinary rules: engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; engaging in conduct that adversely reflects on his fitness to practice law; concealing or knowingly failing to disclose that which a lawyer is required by law to reveal; participation in the creation or preservation of evidence when a lawyer knows or it is obvious that the evidence is false; and suppressing evidence that a lawyer or his client has a legal obligation to reveal or produce.
The majority agrees that "the misconduct is serious and reprehensible," op. at 753, but concludes that a one-year suspension is the proper discipline because of "the isolated nature of this transaction." Id. Translated, the majority was apparently swayed by the fact that this is Mr. Rood's first offense, and he has not had any disciplinary problems since this occurrence.
These reasons are superficial and totally inadequate. They also fail to take into account the deterrent effect of discipline. The message must be loud and clear  lawyers who commit transgressions as serious as those involved in this case forfeit the privilege of being officers of the Court.
I totally agree with The Florida Bar. Disbarment is the appropriate discipline.
McDONALD, Justice, dissenting.
I disagree with the penalty imposed on Rood for his ethical violations. Considering the fact that this occurred many years ago, that this episode is the only evidence of any ethical violation, and that Rood has otherwise been a successful and well-regarded member of The Florida Bar, coupled with the fact that all injury has been resolved by the lawsuit mentioned in the majority opinion, I believe that a ninety-day suspension would have been more than adequate.
NOTES
[*] D.R. 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); D.R. 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law); D.R. 7-102(A)(2) (a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law); D.R. 7-102(A)(3) (a lawyer shall not conceal or knowingly fail to disclose that which he is required by law to reveal); D.R. 7-102(A)(6) (a lawyer shall not participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false); and D.R. 7-109(A) (a lawyer shall not suppress any evidence that he or his client has a legal obligation to produce).