620 So.2d 1252 (1993)
THE FLORIDA BAR, Complainant,
v.
Edward C. ROOD, Respondent.
No. 78742.
Supreme Court of Florida.
June 24, 1993.
*1253 John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, Tallahassee, Bonnie L. Mahon and Joseph A. Corsmeier, Asst. Staff Counsels, Tampa, for complainant.
Donald A. Smith, Jr. of Smith and Tozian, P.A., Tampa, for respondent.
PER CURIAM.
Edward C. Rood (E.C. Rood) petitions this Court to review the report of the referee recommending that he be disbarred from the practice of law. We have jurisdiction pursuant to article V, section 15 of the Florida Constitution and we approve the referee's report.
In June 1974, E.B. Rood, the respondent's father, purchased a piece of property in Lakeland, Florida, for approximately $157,000. E.B. Rood directed the sellers to execute a warranty deed in favor of E.C. Rood. Although the deed did not contain any reservation of rights, E.B. Rood testified that he gave the property to his son with the condition that it would be returned if he could not financially manage the property. On September 20, 1987, E.C. Rood conveyed the property to his father.
The Lakeland property became an issue in the present disciplinary proceeding as a result of a judgment rendered against E.C. Rood in federal district court in Michigan. On November 6, 1986, a jury found that E.C. Rood committed fraud and conspiracy to defraud a doctor, Dale C. Alverson, and an insurance company, Physicians Insurance Company.[1] The jury set damages at $196,000, and the trial judge granted a motion for judgment notwithstanding the verdict. The appellate court reversed the trial judge's decision, and the original verdict was reinstated on January 26, 1989.
The referee found that at the time E.C. Rood conveyed the Lakeland property to his father, he did not have sufficient nonexempt assets to satisfy the Michigan judgment. When the jury verdict was announced, E.C. Rood owned or had an interest in the Lakeland property, a condominium on Dale Mabry in Tampa, a lot on Lemon Street in Tampa, a mortgage on a property owned by David Shedrick in Tampa, and a mortgage on a property owned by D.E. Cornett in Gainesville. On November 24, 1986, eighteen days after the entry of the Michigan judgment, E.C. Rood mortgaged the Dale Mabry condominium to the Bank of Tampa for $32,000.[2]
The Lakeland property which E.C. Rood owned was encumbered with a mortgage held by Southeast Bank. After the Michigan judgment was entered, E.B. Rood paid off the Southeast mortgage and the delinquent property taxes for the preceding three years. E.C. Rood presented a financial statement to First Florida Bank claiming that he owned the property, that he was not involved in any lawsuits, and that *1254 the property was valued at 1.95 million dollars. The bank lent E.C. Rood approximately one hundred thousand dollars, but did not encumber the property. On September 20, 1987, E.C. Rood conveyed the property to his father without receiving any consideration.[3] E.B. Rood then submitted a loan offering sheet to First Florida Bank reflecting that he owned the property. Consequently, the bank established a line of credit for E.B. Rood for up to one million dollars and also took back a mortgage on the property. When E.B. Rood stopped making payments on the note, the bank foreclosed and took title to the property. The bank further encumbered the Lakeland property with a second mortgage when E.B. Rood agreed to assume E.C. Rood's debt to First Florida Bank. On November 4, 1991, First Florida conveyed the property back to E.B. Rood in exchange for $564,299.
On March 28, 1989, Dr. Alverson and Physicians Insurance Company filed a complaint in Polk County circuit court, alleging that E.C. Rood fraudulently conveyed the Lakeland property to E.B. Rood to avoid paying the Michigan judgment. E.C. Rood filed an affidavit in response to the plaintiffs' motion for summary judgment, which states as follows:
4. That during relevant times herein the Affiant owned an interest in real property in fee simple which had sufficient value to satisfy the subject judgment in that such property had a non-exempt tax assessment value of $223,435.
* * * * * *
6. That at the time of the transfer of the subject property from the Affiant to Edward B. Rood, the above-stated non-exempt assets owned by Affiant were sufficient to satisfy the subject judgment.
With respect to the portions of the affidavit quoted above, E.C. Rood testified that he thought he was referring to his interest in the Lemon Street property. E.C. Rood's interest in the Lemon Street property was purchased for $62,001. That amount, plus the $3,000 received on the sale of the Dale Mabry condominium, is the only amount Dr. Alverson and Physicians Insurance Company have received in satisfaction of the Michigan judgment.[4]
In addition to finding that E.C. Rood did not have sufficient assets to pay the Michigan judgment, the referee also found that E.C. Rood engaged in fraudulent conduct by conveying the Lakeland property to his father. The referee relied on Cleveland Trust Company v. Foster, 93 So.2d 112 (Fla. 1957), in which this Court established the badges of fraud in land conveyances. The referee found the following indicia of fraud: 1) a close relationship between the judgment debtor and the transferee; 2) a lack of consideration; 3) insufficient assets to pay the judgment after the transfer; and, 4) a threat of litigation at the time of the transfer. Although both E.B. Rood and E.C. Rood claimed that they did not know about the Michigan judgment until sometime between June and September 1988, the referee found their testimony on this point unbelievable.[5]
The referee recommended finding E.C. Rood guilty of violating the following Rules Regulating the Florida Bar: Rule 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); rule 4-3.3(a)(4) (a lawyer shall not knowingly permit any witness to offer testimony or other evidence that the lawyer knows to be false); rule 4-8.4(b) (a *1255 lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); rule 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and rule 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). The referee recommended that E.C. Rood be disbarred from the practice of law in Florida.
E.C. Rood argues that the referee's findings of fact are clearly erroneous and are not supported by clear and convincing record evidence. Because this Court has delegated the factfinding responsibility to the referee, the referee's findings are entitled to a presumption of correctness. The Fla. Bar v. Hayden, 583 So.2d 1016 (Fla. 1991). The referee's findings will be upheld unless the respondent proves that they are lacking in evidentiary support. The Fla. Bar v. Scott, 566 So.2d 765 (Fla. 1990). In the case now before us, E.C. Rood has failed to meet the burden of demonstrating that the referee's factual findings were unjustified.
E.C. Rood contends that the referee should not have considered the trial transcript and the amended final judgment from Alverson v. Rood, the Florida lawsuit filed by Dr. Alverson and Physicians Insurance Company.[6]Alverson v. Rood involved the exact set of facts and circumstances that gave rise to this disciplinary proceeding. The trial court found that E.C. Rood conveyed the property to his father with the intent to defraud his creditors and that the conveyance hindered the creditors' ability to collect on the judgment. Consequently, the court ordered that the conveyance from E.C. Rood to E.B. Rood be set aside and that E.B. Rood retain no interest in the property.
During the course of E.C. Rood's disciplinary proceedings, the referee reviewed the findings of fact made by the trial judge in Alverson v. Rood and found those facts to be proven by clear and convincing evidence. Because bar disciplinary proceedings are quasi-judicial, rather than civil or criminal, the referee is not bound by the technical rules of evidence. The Fla. Bar v. Rendina, 583 So.2d 314 (Fla. 1991). Referees are authorized to consider any evidence, such as the trial transcript or judgment from the civil proceeding, that they deem relevant in resolving the factual question. We have carefully considered the record and the referee's findings and conclude that the referee's recommendation of guilt is supported by competent and substantial evidence.
We also agree with the referee's recommendation that E.C. Rood be disbarred from the practice of law in Florida. Although we recognize his significant contributions to the legal community and to various charitable organizations, the aggravating factors identified by the referee justify the most serious measure of discipline. E.C. Rood's prior disciplinary record, coupled with his actions in the fraudulent conveyance case now before us, reflect a pattern of misconduct that demonstrates his unfitness as a lawyer.
We disbar E.C. Rood from the practice of law effective on the date of the filing of this opinion.[7] Judgment for costs in the amount of $1,845.66 is hereby entered against E.C. Rood, for which sum let execution issue.
It is so ordered.
BARKETT, C.J., and SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
OVERTON, J., recused.
McDONALD, J., dissents.
NOTES
[1] The facts regarding E.C. Rood's fraudulent actions against Dr. Alverson are set forth in The Florida Bar v. Rood, 569 So.2d 750 (Fla. 1990), in which we suspended Rood for one year.
[2] E.C. Rood's interest in the condominium was ultimately sold for $3,000 at a United States Marshal's sale.
[3] Both E.C. Rood and E.B. Rood testified that the conveyance was simply a return of the conditional gift E.B. Rood had made in June 1974.
[4] Ten days after he conveyed the Lakeland property to E.B. Rood, E.C. Rood sold the Shedrick mortgage for $15,500. Ten months after the conveyance, E.C. Rood sold the Cornett mortgage for $22,500. E.C. Rood used the proceeds from both of these mortgage sales to pay various bills.
[5] During a criminal jury trial in December 1986, in which E.B. Rood represented E.C. Rood as a defendant, E.B. Rood successfully objected to the State of Florida's attempt to introduce a certified copy of the Michigan judgment as evidence. Thus, E.C. Rood's participation in the trial where evidence of the judgment was proffered negates his claim that he was unaware the judgment existed.
[6] Alverson v. Rood, No. 89-900 (Fla. 10th Cir.Ct., Aug. 27, 1990).
[7] In Rood, 569 So.2d at 753, we suspended E.C. Rood for a period of one year effective August 30, 1990. We denied his petition for reinstatement. The Florida Bar re Rood, 613 So.2d 10 (Fla. 1992).