963 So.2d 219 (2007)
THE FLORIDA BAR, Complainant,
v.
David Samuel NICNICK, Respondent.
No. SC06-290.
Supreme Court of Florida.
July 12, 2007.
*220 John F. Harkness, Jr., Executive Director and Kenneth Lawrence Marvin, Director of Lawyer Regulation, The Florida Bar, Tallahassee, FL, and Juan Carlos Arias, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
*221 Kevin P. Tynan of Richardson and Tynan, PLC, Tamarac, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that David Samuel Nicnick be found guilty of professional misconduct and suspended from the practice of law for ninety-one days. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee's findings and recommendations.

FACTS
The Florida Bar filed a complaint against David Samuel Nicnick alleging violations of Rules Regulating the Florida Bar 3-4.2 (violation of Rules of Professional Conduct is a cause for discipline); 3-4.3 (commission of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline); 4-3.3(a)(1) (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal); 4-3.3(a)(2) (a lawyer shall not knowingly fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client); 4-3.3(a)(4) (a lawyer shall not knowingly permit any witness to offer testimony or evidence that the lawyer knows to be false); 4-3.4(a) (obstructing another party's access to evidence); 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another); and 4-8.4(c) (a lawyer shall not engage in conduct involving misrepresentation). After considering stipulated facts and conducting a hearing to determine disputed facts, the referee issued a report in which the following findings and recommendations were set forth:
Nicnick represented a mother in a case involving child support arrearages. In that case, it was alleged that the child's father had fraudulently transferred stock to his mother to avoid a child support obligation. The mother-in-law retained counsel to provide representation for her in the litigation from June 1, 1999, through May 2, 2001, at which time counsel was allowed to withdraw. Nicnick was aware that the mother-in-law was represented by counsel during those dates.
The mother was approached by the mother-in-law's personal assistant. The personal assistant informed the mother that the mother-in-law wished to settle the litigation. The mother informed Nicnick of this development, and sought from him a written outline of a settlement agreement. Nicnick drafted this and a revision requested by the mother. Nicnick had no expectation that the documents he drafted would be returned to him executed.
On or about February 17, 2001, the personal assistant delivered an executed settlement agreement to Nicnick with a signature purporting to be that of the mother-in-law. At the same time, Nicnick and his law partner were meeting with the same personal assistant concerning legal representation; this personal assistant had been accused of stealing the mother-in-law's automobile and was asking Nicnick and his partner to provide his legal representation. Concerned about the personal assistant's damaged relationship with the mother-in-law, Nicnick decided not to proceed with the settlement agreement until the criminal case was resolved. Nicnick did not inform opposing counsel of the signed settlement agreement because he did not want him involved. Thus, opposing counsel had no knowledge of the agreement. Further, the mother did not see the mother-in-law sign the document. For the purposes of the disciplinary proceeding, the parties stipulated that an expert would have testified that *222 the signature on the settlement agreement was not that of the mother-in-law.
On August 28, 2001, the trial court held a hearing in the civil case. At that hearing, Nicnick informed the court that the settlement agreement appeared to be signed by the mother-in-law, but he had no independent confirmation of that fact. The mother-in-law denied signing the document, as well as a certified copy of a traffic citation which Nicnick used as a handwriting exemplar. Subsequent to the hearing, the trial court entered a Partial Finding of Fact and a Final Judgment for the mother, finding she and the mother-in-law entered into a valid settlement agreement that settled all matters in the case. Although the trial court's ruling has been challenged many times, it still stands.
The referee concluded that there were no violations of rules 4-3.3(a)(1), 4-3.3(a)(2), 4-3.3(a)(4), and 4-8.4(c) with respect to the actual use of the settlement agreement in the civil litigation because Nicnick made the appropriate disclosures to the trial judge. Also, the referee concluded that rules 3-4.2, 3-4.3, and 4-8.4(a) were inapplicable to the present case. However, the referee concluded that once Nicnick gave the settlement agreement to his client, the mother, with the understanding that it would be delivered to the mother-in-law, he had an obligation to share the document with opposing counsel. The referee found that, here, Nicnick failed to do so because he did not want opposing counsel to be involved at that time. By failing to share the settlement agreement with opposing counsel before presenting it to the mother-in-law, the referee concluded that Nicnick violated rules 4-3.4(a) and 4-8.4(c).[1]
The referee found that the following aggravating factors were present: (1) prior ten-day suspension for misconduct in Case No. SC01-274; and (2) substantial experience in the practice of law because Nicnick has been practicing since 1992. In mitigation, the referee found: (1) absence of a dishonest or selfish motive; (2) full cooperation with the Bar; (3) good character and reputation; (4) remorse; and (5) remoteness of prior offense.
The referee recommends that Nicnick: (1) be suspended from the practice of law for a period of ninety-one days; (2) complete a minimum of ten hours in ethics Continuing Legal Education courses within six months of the date of this Court's approval of the referee's report; and (3) payment of the Bar's costs in the amount of $3,711.56.
Nicnick petitioned for review of the referee's report, challenging the referee's recommendations as to guilt and discipline.

ANALYSIS
First, Nicnick challenges the referee's recommendations as to guilt. The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Fla. Bar v. Carlon, 820 So.2d 891, 898 (Fla.2002); Fla. Bar v. Vining, 761 So.2d 1044, 1047 (Fla.2000). Nicnick challenges the referee's conclusion that he violated rules 4-3.4(a) (Obstructing Another Party's Access to Evidence) and 4-8.4(c) (Engaging in Conduct Involving Misrepresentation).
*223 Rule 4-3.4(a) provides that a lawyer shall not
unlawfully obstruct another party's access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act.
Rule 4-8.4(c) provides that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
Both parties agree that the settlement agreement is of the type that was relevant in the civil proceeding between the mother and the mother-in-law, and should not have been concealed. Rather, Nicnick essentially argues that he did not share the executed draft settlement agreement with opposing counsel because he was unsure as to its authenticity, and states that had opposing counsel remained in the case, he would have disclosed the document to him before he actually relied upon it. Further, Nicnick alleges that he felt compelled to investigate the authenticity of the document before turning it over to opposing counsel, who withdrew from the case before the investigation could be completed. Moreover, Nicnick claims he believed that opposing counsel was aware of the mother-in-law's actions regarding the settlement. Based on these assertions, Nicnick states that there was no active concealment in the instant case. We disagree.
In Florida Bar v. Forrester, 818 So.2d 477 (Fla.2002), the respondent received a sixty-day suspension for concealing a contract during a deposition (rule 4-3.4(a)) and lying as to its whereabouts (rule 4-8.4(c)). Among other things, the respondent argued that multiple copies of the contract were available and the concealment lasted only for a short period of time because the contract was uncovered by the end of the deposition. The Court rejected these arguments:
The comment notes that one of the purposes of rule 4-3.4(a) is to secure fair competition in the adversary system. Fair competition is secured by ensuring that a party's right to obtain relevant evidence is not frustrated by the concealment of such evidence. We see no reason to distinguish the situation where multiple copies of a document are available or when the concealment lasts for only a short period of time. Thus, we conclude that in the interest of promoting fair competition both the availability of multiple copies and the duration of such concealment do not, under the circumstances of this case, negate the specifically prohibited conduct of concealing a relevant document.
Id. at 482.
Nicnick asserts that it was within ethical boundaries to conceal a potentially forged settlement agreement until he felt the time was right for it to be revealed. As set forth in Forrester, this is not a decision that Nicnick was entitled to make. Whether opposing counsel or the mother-in-law knew that the settlement agreement existed or even had a copy of such is irrelevant in this case. As the referee's conclusion is supported by the record, we accept the referee's conclusion that Nicnick is guilty of violating rule 4-3.4(a).
Next, Nicnick further argues that he lacked the requisite intent to violate rule 4-8.4(c) because he did not deliver the draft agreement to his client, the mother, with the intent to be dishonest. "[I]n order to sustain a violation of rule 4-8.4(c), the Bar must prove intent. The intent element can be satisfied, however, merely by showing that the conduct was deliberate or knowing." Fla. Bar v. Brown, 905 So.2d 76, 81 (Fla.2005) (citation *224 omitted); see also Fla. Bar v. Lanford, 691 So.2d 480, 481 (Fla.1997). A referee's finding with regard to intent is a factual finding which must be upheld if there is competent, substantial evidence in the record to support it. Forrester, 818 So.2d at 483. Additionally, where a referee's factual findings are supported by competent, substantial evidence, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Fla. Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992).
Here, the referee found, based on the testimony adduced at the disciplinary hearing, that Nicnick deliberately and knowingly concealed the agreement from opposing counsel because he did not want opposing counsel involved. Thus, Nicnick's misconduct was intentional because he knowingly concealed the document. See Forrester, 818 So.2d at 483. Further, the referee's finding is based on competent, substantial evidence as revealed in the testimony. See MacMillan, 600 So.2d at 459. It is difficult to understand why Nicnick believes that his failure to share the purported settlement agreement with opposing counsel does not constitute a deceitful act. By its very nature, the act of omission demonstrated in concealing a relevant document is deceptive. Cf. Fla. Bar v. Miller, 863 So.2d 231, 234 (Fla.2003). By concealing the settlement agreement, Nicnick was effectively representing to opposing counsel that there was no settlement agreement and that issues remain in the case. As the referee's conclusion is supported by the record, we approve the referee's conclusion that Nicnick should be found guilty of violating rule 4-8.4(c).
Nicnick also challenges the referee's recommended discipline. In reviewing a referee's recommended discipline, this Court's scope of review is broader than that afforded to the referee's findings of fact because, ultimately, it is the Court's responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, this Court will generally not second-guess the referee's recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The facts in Florida Bar v. Myers, 581 So.2d 128 (Fla.1991), are similar to the present case. In Myers, the respondent failed to notify opposing counsel of a final hearing in a dissolution of marriage proceeding in which he represented the husband. At the final hearing, the respondent submitted a disavowed settlement agreement and intentionally failed to inform the court that the wife was represented by counsel. As a result, the husband was awarded custody of the minor child of the parties. At a disciplinary hearing before a referee, the respondent was found guilty of violating rules 4-3.3(d) (a lawyer shall inform the tribunal of all material facts known, whether or not the facts are adverse), 4-8.4(a) (a lawyer shall not violate or attempt to violate the Rules of Professional Conduct), and rule 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice). On review, the Court imposed a ninety-day suspension to be followed by two years' probation. However, unlike the respondent in Myers, where exceptionally substantial mitigating factors existed,[2] Nicnick has previously been subject to a disciplinary suspension and has substantial experience *225 in the practice of law. Hence, despite those mitigating factors presented here, the record here supports a suspension greater than that imposed in Myers.
Likewise, in Florida Bar v. Schultz, 712 So.2d 386 (Fla.1998), we imposed a ninety-day suspension on a respondent for dishonesty unrelated to any representation or case pending at the time the misconduct occurred. Also, as noted above, in Florida Bar v. Forrester, 818 So.2d 477 (Fla.2002), a respondent received a sixty-day suspension for concealing a contract during a deposition and then lying as to its whereabouts. Additionally, in Forrester, opposing counsel knew of the existence of the contract and had copies of such, and the misconduct occurred in the course of a single deposition. In the present case, Nicnick drafted the settlement agreement in the course of representation in a pending case and obtained a signature, now stipulated by the parties to be a forgery, to execute the agreement. Further, Nicnick effectively worked through an intermediary to contact a represented party, and then withheld the settlement agreement from opposing counsel who had no knowledge of the agreement.
Nicnick's misconduct is more egregious than that involved in Myers, Schultz, and Forrester, and is the type of misconduct that often results in much harsher sanctions than was imposed in those cases. In Florida Bar v. Hmielewski, 702 So.2d 218 (Fla.1997), and Florida Bar v. Rood, 569 So.2d 750 (Fla.1990), respondents were found guilty of engaging in misconduct involving the concealment of documents. In those cases, the respondents also abused the discovery process and made deliberate misrepresentations to the court that were prejudicial to the administration of justice. In Hmielewski, we imposed a three-year suspension; in Rood, we imposed a one-year suspension. Although Nicnick was not found to have committed misconduct relating to the actual use of the settlement agreement, the less onerous sanction recommended by the referee in this case reflects this distinction. Accordingly, we approve the referee's recommendation to impose a ninety-one-day suspension.

CONCLUSION
David Samuel Nicnick is hereby suspended for ninety-one days.
The suspension will be effective thirty days from the filing of this opinion so that Nicnick can close out his practice and protect the interests of existing clients. If he notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately.
David Samuel Nicnick shall accept no new business from the date this opinion is filed until he is reinstated.
Further, Nicnick shall complete a minimum of ten hours in ethics Continuing Legal Education courses within six months of the date of this opinion.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from David Samuel Nicnick in the amount of $3,711.56, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Although the referee was concerned with the possibility that Nicnick communicated with a party represented by counsel, the referee did not consider whether Nicnick violated rule 4-4.2 (Communication with a Represented Party) because the Bar did not charge him with such.
[2] In Myers, we noted that the respondent's misconduct was influenced by the abduction of his child by his former wife, which occurred during the same period as the representation.