# Supreme Court of Florida

---

No. SC2022-0472

---

**THE FLORIDA BAR,**
Complainant,

vs.

**CHARLIE EASA FARAH, JR.,**
Respondent.

February 27, 2025

PER CURIAM.

The Florida Bar seeks review of a referee's report recommending that Respondent, Charlie Easa Farah, Jr., be found not guilty of violating the Rules Regulating The Florida Bar for his involvement in the filing of thousands of meritless *Engle*-progeny[1] claims in state and federal court.[2] The Bar argues that the record before us clearly supports a finding that Farah is guilty of each of the charged rule violations, as well as of violating rules 4-1.5(f)(2)

---

1. *See Engle v. Liggett Grp., Inc.*, 945 So. 2d 1246 (Fla. 2006).

2. We have jurisdiction. *See* art. V, § 15, Fla. Const.

and 4-1.5(f)(4)(D)(iii), and it urges us to impose a 30-day suspension in this matter.

We agree with the Bar in part and disapprove the referee's not guilty recommendation as to rules 4-1.3, 4-1.4(a), and 4-1.16(a)(1). We instead find Farah guilty of violating each of those rules. We also find Farah guilty of violating rule 4-1.5(f)(2). However, instead of sanctioning Farah at this time as requested by the Bar, we refer this case back to the referee to hold a hearing and provide a recommendation as to the appropriate sanction.

## I.

Back in 2006, the Court approved the decertification of the *Engle* class action group. *See Engle*, 945 So. 2d at 1277. Former members of the class, which consisted of smokers and their survivors, were given one year from this Court's mandate—until January 11, 2008[3]—to file individualized claims in which certain findings would receive res judicata effect. *Id.*

Farah became involved in tobacco litigation around the same time the *Engle* class was decertified. He initially represented 163

---

3. The mandate in *Engle* issued January 11, 2007.

*Engle* plaintiffs. He later associated with Norwood Sherman Wilner, a Jacksonville-based lawyer with experience in tobacco litigation, and the two agreed to share the labor and expense required to prosecute additional *Engle*-progeny cases. Specifically, the two agreed that Wilner would file cases and conduct trials and discovery, while Farah would provide personnel support and financial backing.

Before the January 11, 2008, deadline expired, Wilner filed more than 3,000 *Engle cases* in state and federal court. The lawsuits alleged various claims related to cigarette smoking, such as personal injury and wrongful death, and were filed on behalf of 4,432 *plaintiffs*, including the 163 plaintiffs originated by Farah's firm. Farah's name was listed in the signature block of each complaint filed by Wilner.

The federal claims were filed in the United States District Court for the Middle District of Florida. The Middle District stayed the cases until October 2010, at which point Wilner voluntarily dismissed 499 cases (a little more than 10% of the cases filed). The Middle District then ordered plaintiffs' counsel to review the remaining cases to determine whether any other cases were non-

viable and should therefore be dismissed.  In March 2011, Wilner

certified that each pending *case* had been reviewed and

recommended the dismissal of 254 additional cases, meaning more

than 2,900 cases were still pending.  Despite Wilner's certification,

the Middle District went on to dismiss hundreds more *Engle* cases

throughout 2012 and 2013.

The *Engle* cases were eventually whittled down nearly 90% to

just 415 *plaintiffs*, all with whom the tobacco companies settled in

2015.  Given the large number of cases that were ultimately

dismissed as non-viable, that same year, the Middle District

appointed a special master to investigate whether Wilner and

Farah's conduct warranted sanctions.  The special master

submitted a report finding that Wilner and Farah violated Federal

Rule of Civil Procedure 11,[4] 28 U.S.C. § 1927,[5] the Middle District's

---

4.  Rule 11(b) prohibits the signing and filing of frivolous or factually unsupported pleadings.  A violation of 11(b) is sanctionable under 11(c).

5.  Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

local rules, and the Florida Rules of Professional Conduct. In 2017, after holding a sanctions hearing, the Middle District entered a detailed order finding Wilner and Farah violated their professional obligations by failing to inform themselves of the facts of their clients' cases. The Middle District reprimanded both lawyers and required them to pay $9,164,404.12 as a sanction.[6] *In re Engle Cases*, 283 F. Supp. 3d 1174, 1259 (M.D. Fla. 2017). That amount was later reduced to $4,329,668.43, and Wilner and Farah each paid half.

Based on this conduct, the Bar charged Farah with violating rules 4-1.3 (Diligence), 4-1.4(a) (Communication), and 4-1.16 (Declining or Terminating Representation). The Bar's complaint was referred to a referee, who held a hearing and filed a report recommending that Farah be found not guilty of the charged rule

---

6. We suspended Wilner in March 2022 for 91 days for filing thousands of *Engle*-progeny claims without investigating or informing himself as to the facts of each case, and for knowingly misrepresenting the viability of the claims to the Middle District. *Fla. Bar v. Wilner*, No. SC2021-0373 (Fla. Mar. 3, 2022) (approving uncontested referee's report). Wilner was later denied reinstatement to the Bar when he failed to fully comply with rule 3-6.1 during his suspension. *Fla. Bar v. Wilner*, 382 So. 3d 621, 625 (Fla. 2024).

violations. The referee found that the Bar improperly based its case on the special master's report and investigatory materials and did not conduct its own investigation into Farah's conduct.

The Bar filed a notice of intent to seek review of the referee's report. It challenges the referee's recommendation that Farah be found not guilty of the charged rule violations. It also argues that Farah should be found guilty of two additional rule violations and that he should be suspended from the practice of law for 30 days.

**II.**

Our review of a referee's findings of fact is limited, and if the findings of fact are supported by competent, substantial evidence in the record, we will not reweigh the evidence and substitute our judgment for that of the referee. *Fla. Bar v. Alters*, 260 So. 3d 72, 79 (Fla. 2018) (citing *Fla. Bar v. Frederick*, 756 So. 2d 79, 86 (Fla. 2000)). As for a referee's recommendations as to guilt, "the referee's factual findings must be sufficient under the applicable rules to support the recommendations." *Fla. Bar v. Patterson*, 257 So. 3d 56, 61 (Fla. 2018) (citing *Fla. Bar v. Shoureas*, 913 So. 2d 554, 557-58 (Fla. 2005)). Ultimately, the burden is on the party challenging the referee's findings of fact and recommendations as to guilt to

demonstrate "that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions." *Fla. Bar v. Germain*, 957 So. 2d 613, 620 (Fla. 2007) (citing *Fla. Bar v. Carlon*, 820 So. 2d 891, 898 (Fla. 2002)).

We begin our review of the referee's report by first addressing the referee's finding that the Bar failed to conduct its own investigation into Farah's conduct and instead improperly based its case on the federal court's sanction order and the special master's report. The report and sanction order are the product of an extensive seven-month investigation. The report is nearly 300 pages in length and includes numerous exhibits. The federal court's sanction order is equally comprehensive. It details at great length how Wilner and Farah recklessly initiated thousands of meritless *Engle*-progeny cases, and how their actions greatly burdened the federal court.

Nothing in our rules or case law requires that the Bar essentially duplicate the work of the special master and federal court by conducting its own extensive investigation into Farah's conduct during the *Engle* litigation. Furthermore, the federal court's order and the special master's report were both admissible

in the proceedings before the referee as evidence of Farah's conduct. *See Fla. Bar v. Rood*, 620 So. 2d 1252, 1255 (Fla. 1993) (explaining that Bar discipline proceedings are not bound by the technical rules of evidence and that a referee may consider any evidence deemed relevant in resolving the factual question).

Based on our thorough review of the record, particularly the Middle District's sanction order and the special master's report, we find that the record in this case contradicts the referee's not guilty recommendation. As detailed below, we find Farah guilty of multiple rule violations.

### Rules 4-1.3 and 4-1.4

Under rule 4-1.3, a lawyer must "act with reasonable diligence and promptness in representing a client." And under rule 4-1.4(a), a lawyer must: "promptly inform the client" of matters requiring "informed consent"; "consult with the client about the means by which the client's objectives are to be accomplished"; and "keep the client reasonably informed about the status of the matter." *See* R. Regulating Fla. Bar 4-1.4(a)(1)-(3).

*Farah's Original 163 Clients*

The special master found that Farah began interviewing potential *Engle* plaintiffs in late 2006, and ultimately identified 163 clients that were included among the more than 3,000 *Engle* cases Wilner filed. Farah claimed he was in communication with most of the 163 clients up to the January 11, 2008, filing deadline. Yet, 8 of the 163 clients died before January 11, 2008, and personal injury claims were still filed on their behalf. Additionally, Farah filed a time-barred wrongful death claim on behalf of another client who died before the class period.

From these facts, it is clear Farah did not adequately communicate with all 163 plaintiffs his firm originated, nor did he exercise reasonable diligence by conducting a pre-suit investigation into their claims. Had Farah diligently conducted a pre-suit investigation in each case and maintained client communication, he surely would have learned of the time-barred claim and the 8 deceased clients before filing their personal injury claims.

Farah argues that his conduct should be considered in the context of the thousands of *Engle*-progeny claims at issue and the time constraints imposed by our decision in *Engle.* But the

existence of these exigencies did not alter, let alone diminish, Farah's professional obligations under rules 4-1.3 and 4-1.4(a). He was required under both rules to handle all 163 cases with the same standard of care that he would provide to a single case. As the Middle District explained in its sanction order, "the volume of claims does not render the fundamental precepts of lawyer-client responsibilities . . . procedural niceties." *In re Engle Cases*, 283 F. Supp. 3d at 1221 (quoting *In re Engle Cases*, 767 F.3d 1082, 1114 (11th Cir. 2014)).

Accordingly, we find Farah guilty of violating rules 4-1.3 and 4-1.4(a) with respect to the 163 clients his firm originated.

*The Thousands of Other Cases*

Farah knowingly partnered with Wilner to prosecute the thousands of other *Engle*-progeny cases. They agreed to divide the labor and to evenly split any attorney's fees recovered. Although he predominantly played a behind-the-scenes role, mainly providing personnel support and financial backing, Farah, nevertheless, knowingly agreed to provide legal services for which he intended to be paid at the end of the litigation on the thousands of other *Engle* cases initiated by Wilner. Furthermore, Farah's name was listed in

the signature block of each complaint filed by Wilner. We thus find that Farah was co-counsel on the thousands of other *Engle*-progeny cases Wilner initiated.

As co-counsel, Farah could not satisfy his professional obligations under rules 4-1.3 and 4-1.4(a) by simply deferring to Wilner's expertise in tobacco litigation. As with the 163 clients his firm originated, Farah also had a duty to adequately communicate with and provide diligent representation to the thousands of other *Engle* plaintiffs to whom he agreed to provide legal services. Had Farah been in communication with these other *Engle* plaintiffs and exercised reasonable diligence by conducting pre-suit investigations into their claims, he would have discovered that most were not viable.

Indeed, a questionnaire sent by the Middle District to the named plaintiffs revealed that more than 500 died before a complaint was filed on their behalf, and that 572 never authorized Wilner and Farah to file or maintain a lawsuit on their behalf. The reach of unauthorized cases included a sitting juror, who learned for the first time in 2012 that she was named as an *Engle* plaintiff in a suit filed by Wilner and Farah.

Accordingly, we find that Farah is also guilty of violating rules 4-1.3 and 4-1.4(a) with respect to his representation of the thousands of other *Engle* plaintiffs.

## Rule 4-1.16(a)(1)

Rule 4-1.16(a)(1) prohibits a lawyer from representing a client if "the representation will result in [a] violation of the Rules of Professional Conduct or law."

Here, Farah took on far more *Engle* plaintiffs than he could reasonably handle. He should have known well before the January 11, 2008, filing deadline that he could not provide legal services to the thousands of *Engle* plaintiffs and still fully comply with his professional obligations under rules 4-1.3 and 4-1.4(a). As the federal court detailed in its sanction order:

> Wilner and Farah violated their obligations by failing to inform themselves about the facts of their "clients'" cases. Had they done so, they would not have advanced hundreds of complaints involving dead plaintiffs, people who never smoked, people who never lived in Florida, people who did not authorize a lawsuit, and people whose claims had been previously adjudicated. These complaints were without merit in law or fact, and they contained material assertions that were false. Overwhelming evidence would have contradicted these allegations as well, but for the fact that Wilner and Farah chose not to conduct any meaningful investigation before recklessly filing thousands of complaints. And

there is evidence that Wilner and Farah actually knew that some of the personal injury plaintiffs were dead, that several plaintiffs or survivors did not want to pursue a claim, and that some of the plaintiffs or decedents did not smoke, did not live in Florida, or already had their claims adjudicated.

*In re Engle Cases*, 283 F. Supp. 3d at 1243. Accordingly, we find Farah guilty of violating rule 4-1.16(a)(1).

## Rule 4-1.16(b)(1)

Rule 4-1.16(b)(1) provides that a lawyer may withdraw from representing a client only if "withdrawal can be accomplished without material adverse effect on the interests of the client."

Here, between February and October 2007, Farah sent letters to 146 clients who were potential *Engle* plaintiffs declining representation. The clients were advised to consult with another lawyer and were informed of the January 11, 2008, filing deadline. The Bar argues that Farah violated rule 4-1.16(b)(1) by sending some of the letters close to the January 11, 2008, deadline, thereby leaving the clients insufficient time to obtain new counsel. But it is not entirely clear from our review of the record when Farah took on the clients, why he later declined to represent them, or when the

clients received Farah's letter. Accordingly, we approve the referee's not guilty recommendation as to rule 4-1.16(b)(1).

## Rule 4-1.5(f)

The Bar asks that we find Farah guilty of two other violations, neither of which Farah was charged with in the Bar's complaint: rule 4-1.5(f)(2) and rule 4-1.5(f)(4)(D)(iii). Rule 4-1.5(f)(2) requires that an agreement to compensate a lawyer on a contingency fee basis be in writing and signed by the client and the lawyer and that each lawyer or law firm participating in a contingency fee sign the fee agreement with the client and agree to assume joint legal responsibility to the client. Rule 4-1.5(f)(4)(D)(iii) addresses the division of fees among lawyers in different firms.

However, we may only consider whether Farah violated rule 4-1.5(f)(2) because the conduct associated with a violation of rule 4-1.5(f)(4)(D)(iii) is not within the scope of the Bar's complaint. *See Fla. Bar v. Fredericks*, 731 So. 2d 1249, 1253 (Fla. 1999) ("[S]pecific findings of uncharged conduct and violations of rules not charged in the complaint are permitted where the conduct is either specifically referred to in the complaint or is within the scope of the specific allegations in the complaint."). The conduct associated with

a violation of rule 4-1.5(f)(2) and the lack of written fee agreements, on the other hand, is within the scope of the Bar's complaint.[7]

Here, the special master found that Farah did not have written fee agreements with many of the *Engle* plaintiffs his firm originated, as required by rule 4-1.5(f)(2). He found that among the 163 *Engle* plaintiffs Farah's firm originated, Farah only produced 122 fee agreements. Farah had no fee agreement at all for 27 clients. And for the remaining 14 clients, they only signed written fee agreements sometime *after* the January 11, 2008, filing deadline. Further, of these 14 clients, only 5 signed fee agreements in 2008, while the rest signed fee agreements sometime between 2009 and 2015. The special master also found that Farah never obtained any of the clients' written consent to Wilner participating in the eventual contingency fee. Accordingly, we find Farah guilty of violating rule 4-1.5(f)(2).

## III.

Having found Farah guilty of violating rules 4-1.3, 4-1.4(a), 4-1.16(a)(1), and 4-1.5(f)(2), we now consider the appropriate

---

7. *See* Bar Compl. ¶¶ 19, 38.

disciplinary sanction for his misconduct.  The Bar urges us to suspend Farah from the practice of law for 30 days.  However, the referee did not conduct a sanction hearing in this matter, and "due process requires that [an] attorney be permitted to 'explain the circumstances of the alleged offense and to offer testimony in mitigation of any penalty to be imposed.' " *Fla. Bar v. Carricarte*, 733 So. 2d 975, 979 (Fla. 1999) (quoting *Fla. Bar v. Cruz*, 490 So. 2d 48, 49 (Fla. 1986)).  We, therefore, find the record insufficient to determine the appropriate sanction and refer this case back to the referee to conduct a sanctions hearing.  *See Fla. Bar v. Marrero*, 157 So. 3d 1020, 1026 (Fla. 2015) (rejecting not guilty recommendation and referring case back to referee for sanctions hearing).

## IV.

Accordingly, Charlie Easa Farah, Jr., is hereby found guilty of violating rules 4-1.3, 4-1.4(a), 4-1.16(a)(1), and 4-1.5(f)(2).  This case is referred back to the referee to hold a hearing and consider the appropriate sanction.  The referee must file an amended report recommending a disciplinary sanction within 90 days of the date of this opinion.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, Mark Lugo Mason, Bar Counsel, and Shaneé L. Hinson, Bar Counsel, The Florida Bar, Tallahassee, Florida,

    for Complainant

Henry M. Coxe III and Brian T. Coughlin of Bedell, Dittmar, DeVault, Pillans & Coxe, P.A., Jacksonville, Florida, and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, Florida,

    for Respondent